Receipt number 9998-4407402

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
Jan 9 2018
U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| CHEUNG, JIM W. ) | |
| ) | |
| KOS, CHRISTOPHER D. ) | |
| ) | |
| MILLER, CRAIG P. ) | |
| ) | |
| ONEWOKAE, JACOB O. ) | |
| ) | |
| WRIGHT, SEAN E. ) | CASE NO. 18-48 C |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

1.  Plaintiffs are or were employees of the defendant United States Government employed as Deportation Officers, and/or in related positions by the Department of Homeland Security, U.S. Immigration and Customs Enforcement in the St. Paul Field Office, Saint Paul, Minnesota. Plaintiffs bring this action on behalf of themselves and other employees similarly situated for a declaratory judgment, backpay and other relief, pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1346(a)(2) and 28 U.S.C. §§ 1491, 2201 and 2202, 5 U.S.C. § 5596, and the overtime provisions of Title 5 of the U.S. Code, 5 U.S.C. §§ 5541, *et. seq.*, to remedy the defendant's willful and unlawful violations of federal law complained of herein.

### JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(2), 28

U.S.C. § 1331, 28 U.S.C. § 1491, and 29 U.S.C. § 216(b). Venue is proper pursuant to 28 U.S.C. § 1402.

## PARTIES

3. Plaintiff Jim Cheung, a resident of Apple Valley, Minnesota, is employed as a Deportation Officer by U.S. Immigration and Customs Enforcement in the St. Paul Field Office.

4. Additional persons who are plaintiffs in this action are also current or former employees of the defendant employed as Deportation Officers and/or in related capacities at the St. Paul Field Office and they have given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b). These written consent forms set forth each plaintiff's name and home address and are attached as Exhibit A.

5. Each of the plaintiffs in this action is an "employee" within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

6. The defendant Government of the United States is, and at all material times has been, a "public agency" and "employer" within the meaning of the FLSA, 29 U.S.C. § 203(x) and § 203(d). Defendant employs the plaintiffs and other employees in similar activities and has its principal place of business in Washington, D.C.

## FACTS

7. At all or some of the times material herein, and since May 1, 2017, the plaintiffs have worked as Deportation Officers, and/or in related positions. At all times material herein, while working in these positions each of the plaintiffs has worked hours in excess of 85.5 hours in a 14-day period.

8. Plaintiffs' job duties involve enforcing immigration law in a five-state area of

responsibility, including investigating possible immigration offenses, arresting immigration offenders, and deporting immigration offenders.

9. At all relevant times, plaintiffs have been certified to receive, and have in fact received, administratively uncontrollable overtime.

10. The Saint Paul Field Office requires that there be an employee available to answer phone calls from local law enforcement agencies 24 hours per day and, if necessary, to physically respond to local law enforcement agencies.

11. Local law enforcement agencies call U.S. Immigration and Customs Enforcement to inquire, *inter alia*, about foreign nationals and potential foreign nationals that they have in custody or to notify the government that it is releasing a foreign nation.

12. Because defendant does not staff the Saint Paul Field Office 24 hours per day, it relies upon a "night phone" staffed by its employees to cover phone calls from local law enforcement during hours when the office is closed.

13. Since May 1, 2017, as well as before, and continuing to date, defendant has assigned deportation officers, including plaintiffs, to monitor and respond to the "night phone" on a rotational basis.

14. The night phone rotational schedule is set months in advance by defendant.

15. Defendant assigns the schedule for plaintiff deportation officers, and others similarly situated, to monitor and respond to calls on the night phone. Defendant requires plaintiff deportation officers, and those similarly situated, to be in a state of readiness to respond to night phone calls, answer questions, and make reports at all times that plaintiffs, and those similarly situated, are assigned to monitor the night phone.

16. The night phone is not a physical phone, but instead involves the defendant

forwarding calls from a 24-hour line to a deportation officer's work cell phone.

17. Defendant staffs the Saint Paul Field Office from 7 a.m. to midnight on weekdays. During the remaining hours, defendant uses the "night phone" to cover incoming calls from local law enforcement.

18. Plaintiff deportation officers, and those similarly situated, are assigned to cover the night phone for one day at a time with the following shifts:

- Tuesday: midnight to 7 a.m.
- Wednesday: midnight to 7 a.m.
- Thursday: midnight to 7 a.m.
- Friday: midnight to 7 a.m.
- Saturday: midnight to 7 a.m.
- Saturday: 7 a.m. to Sunday 7 a.m.
- Sunday: 7 a.m. to Monday 7 a.m.

19. Since approximately early October 2017, the defendant has placed two deportation officers on each night phone shift. Only one deportation officer, however, has the night phone ring to his work cell phone.

20. Between approximately May and July 2017, defendant scheduled the duty phone to be covered 24 hours per day by paid employees. During this time, the deportation officers covering the duty phone received pay for all of the time that they were responsible for monitoring the night phone.

21. At all other relevant times, defendant has paid plaintiffs, and all others similarly situated, with administratively uncontrollable overtime for the times that they respond to the night phone; however, defendant only pays plaintiff deportation officers, and those similarly situated, for time they actually spend actively responding to the night phone.

22. During the time periods that they are assigned to monitor the duty phone, the plaintiff deportation officers, and all others similarly situated, are required to answer the phone

4

and address any issues raised by local law enforcement. During these periods, the plaintiff deportation officers, and those similarly situated, are also expected to do "pickups" of aliens.

23. A pickup occurs when local law enforcement is releasing an undocumented person that ICE wishes to detain. An officer has to travel to where the alien is being released, pick up the undocumented person, and then arrange for bed space at a detention center for the them. Picks up typically take several hours.

24. In October 2017, defendant implemented a new night phone policy. The policy states that doing pickups is a "standard expectation" of the officer monitoring the night phone.

25. When local law enforcement calls the night phone, the deportation officer monitoring the phone has to answer the call and deal with whatever issue is presented. The call frequently entails the officer interviewing an undocumented person detained by local law enforcement and running the necessary checks on the officer's work laptop computer to determine whether a detainer should be issued for the person.

26. In the area covered by the Saint Paul Field Office, both the City of Minneapolis and Hennepin County, the largest municipalities in the area will not detain undocumented people for additional time to allow U.S. Customs and Immigration Enforcement to take the person into custody. This causes more pickups for the deportation officer monitoring the duty phone, because the officer frequently only has 30 minutes to pick up the undocumented person.

27. Plaintiff deportation officers, and those similarly situated, are extremely restricted during the times that they are required to respond to the night phone.

28. When plaintiff deportation officers, and those similarly situated, are responsible for the night phone, the officers typically sleep on the couch and set up their laptops nearby so as to be able to immediately answer and handled calls and also to attempt to lessen the disruption to

their families with the frequent nighttime interruptions.

29. During the time period that they are responsible for monitoring the duty phone, plaintiff deportation officers, and those similarly situated, set up an office at home with their government-assigned laptop. Plaintiff deportation officers have to be able to access the government-issued laptop when responding to the night phone to access necessary records, databases, and forms used in responding to inquiries from local law enforcement.

30. During the midnight to 7 a.m. night phone shifts, plaintiff deportation officers, and those similarly situated, receive several calls on the night phone to which they are required to respond.

31. Plaintiff deportation officers, and those similarly situated get little or no sleep while responsible for the night phone; they frequently actively respond to calls for five or more hours of their seven-hour shifts.

32. Plaintiff deportation officers, and those similarly situated, who monitor the duty phone during 24-hour weekend periods, receive frequent calls throughout the day and night, often responding to calls for 12 hours or more of the 24-hour shift. For instance, on a recent weekend shift, plaintiff Cheung spent 17 hours responding to calls on the night phone and completing pickups.

33. Plaintiff deportation officers, and those similarly situated, must use a government vehicle to do a pick up. Because of this, plaintiff deportation officers, and those similarly situated either must have a government vehicle at their home or be close enough to the Saint Paul Field Office to get a government vehicle to do a pickup.

34. Because they must be able to use their government-issued laptop and a government vehicle when they receive calls on the night phone, plaintiff deportation officers,

and those similarly situated, are not able to leave their homes or use the time between calls for their own purposes.

35. During times that they are responsible for the night phone, plaintiff deportation officers, and those similarly situated, must remain at home. Plaintiff deportation officers, and those similarly situated cannot go do anything with their families or go anywhere because they would not be able to immediately answer their phone and use their computers.

36. Furthermore, plaintiff deportation officers, and those similarly situated are prohibited by defendant from using a government vehicle for a non-government purpose or transporting a family member or friend in a government vehicle. Accordingly, plaintiff deportation officers, and those similarly situated, are restricted to their homes when monitoring the night phone, except for the time that they spend engaged in pickups.

37. Defendant has instructed plaintiff deportation officers, and those similarly situated, that they are not permitted to engage in any activities that could cause them to miss a call to the night phone, including, for instance, mowing their lawns.

38. Due to the restrictions and requirements of night phone duty, plaintiffs' homes are their duty stations when assigned to night phone duty.

39. At all times material, plaintiff deportation officers, and those similarly situated, are so restricted by defendant during the periods that they are required to monitor and respond to the night phone that they cannot the time effectively for their own purposes. Thus, plaintiffs are working for their entire shift to which they are assigned to night phone duty.

### CLAIMS FOR RELIEF FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT AND TITLE 5 OF THE U.S. CODE

#### COUNT I

FAILURE TO PAY FLSA

OVERTIME UNDER SECTION 7(k) OF THE ACT, 29 U.S.C. § 207(k)

40. Plaintiffs incorporate by reference paragraphs 1 through 39 in their entirety and restate them herein.

41. Employees covered by the FLSA must be paid at a rate of not less than one and one-half times their regular rate of pay for each hour worked in excess of 40 hours in a workweek. Agencies who adopt a work period of at least 7 days and not more than 28 days, are permitted to pay overtime compensation to federal agency employees pursuant to the hourly standards under section 7(k) of the Act, 29 U.S.C. § 207(k), provided that the employees are engaged in law enforcement activities, and that the employees also receive administratively uncontrollable overtime pursuant to 5 U.S.C. § 5545(c)(2). *See* 5 C.F.R. § 551.541.

42. Under section 7(k) of the FLSA, in a 14-day work period, law enforcement employees who also receive AUO are entitled to FLSA overtime compensation at the rate of one and one-half their regular rate of pay for all hours that they are suffered or permitted to work in excess of 85.5 hours. *Id.*

43. The FLSA additionally contains protections enabling employees to assert these rights. Retaliation against employees seeking to be paid overtime is illegal under 29 U.S.C. § 215(a).

44. The administration of the FLSA in the federal sector must be done in a manner that is consistent with the Department of Labor's implementation of the FLSA in other sectors of the economy.

45. Defendant is required under the FLSA to pay plaintiffs, and those similarly situated, for all work time that is suffered or permitted. 5 C.F.R. § 551.402(a)(2); 29 C.F.R. § 553.221(b).

46. Defendant is required, under the FLSA, to pay plaintiffs, and those similarly situated, for all time spent in a standby status. 5 C.F.R., § 551.431(a); 29 C.F.R. § 553.221(d).

47. Defendant has violated, and continues to violate the FLSA by failing and refusing to compensate plaintiffs and other similarly situated employees for hours of work when plaintiffs, and those similarly situated, spend monitoring, but not actively responding to, the night phone, as they are so restricted that their time cannot be effectively used for their own purposes.

48. All of the time that plaintiffs spend monitoring the night phone during the scheduled night phone shifts constitutes compensable hours of work.

49. Plaintiffs, and those similarly situated, are officially ordered to spend 7- or 24-hour shifts monitoring and responding to the night phone.

50. Plaintiffs, and those similarly situated, are restricted to their home, where they maintain their government-issued laptops, and must remain in a state of readiness to respond to calls on the night phone during the entirety of their assigned shifts monitoring the phone.

51. Plaintiffs, and those similarly situated, are so restricted when monitoring the night phone, that they cannot use the time effectively for their own purposes.

52. The defendant, however, violates the FLSA by failing to compensate plaintiffs, and those similarly situated, for the entire shifts where they monitor the night phone.

53. The defendant has violated, and is continuing to violate in a willful and intentional manner, the provisions of the FLSA. As a consequence, at all times material herein, the plaintiffs have been unlawfully deprived of overtime compensation and other relief for the maximum statutory period allowed under federal law.

54. As a result of the defendant's willful and purposeful violations of the FLSA, there have become due and owing to each of the plaintiffs various amounts that have not yet been precisely determined. The employment and work records for each plaintiff are in the exclusive possession, custody and control of defendant and its public agencies and the plaintiffs are unable to state at this time the exact amounts owing to each of them. Defendant and its public agencies are under a duty imposed by the Government Accounting Office retention schedule, the FLSA (29 U.S.C. §211(c)) and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to plaintiffs and other employees similarly situated from which the amounts of defendant's liability can be ascertained.

55. Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

56. Pursuant to the Back Pay Act, 5 U.S.C. § 5596, plaintiffs are entitled to recover interest on their back pay damages for the defendant's failure to pay them overtime compensation.

57. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b), the Back Pay Act, 5 U.S.C. § 5596, as well as other applicable laws and regulations.

## COUNT II

### FAILURE TO COMPLY WITH THE PROVISIONS OF TITLE 5 REGARDING SCHEDULED OVERTIME

58. Plaintiffs incorporate by reference paragraphs 1 through 57 in their entirety and restate them herein.

59. If an agency opts to pay an employee administratively uncontrollable overtime, the employee "shall receive premium pay for this duty on an annual basis instead of premium

pay provided by other provisions of this subchapter, except for regularly scheduled overtime, night, and Sunday duty, and for holiday duty." 5 U.S.C. § 5545(c)(2). *See also* 5 C.F.R. §550.151 ("An agency may pay premium pay on an annual basis, instead of other premium pay prescribed in this subpart (except premium pay for regular overtime work, and work at night, on Sundays, and on holidays), to an employee in a position in which the hours of duty cannot be controlled administratively and which requires substantial amounts of irregular or occasional overtime work, with the employee generally being responsible for recognizing, without supervision, circumstances which require the employee to remain on duty.").

60. Under the regulations covering federal employees, "[r]egular overtime work means overtime work that is part of an employee's regularly scheduled administrative workweek." 5 C.F.R. § 550.103.

61. "Regularly scheduled administrative workweek, for a full-time employee, means the period within an administrative workweek … within which the employee is regularly scheduled to work." 5 C.F.R. § 550.103.

62. "Regularly scheduled work means work that is scheduled in advance of an administrative workweek under an agency's procedures for establishing workweeks in accordance with §610.111 …." 5 C.F.R. § 550.103.

63. Defendant schedules plaintiff deportation officers, and those similarly situated, for shifts spent monitoring and responding to the night phone months in advance of the actual shifts.

64. The Office of Personnel Management regulations require that work that should have or could have been scheduled in advance to be treated for pay purposes as if it was scheduled in advance of the administrative workweek. 5 C.F.R. § 610.121(b).

65. Plaintiff deportation officers, and those similarly situated, however, are paid only administratively uncontrollable overtime for the time that the spend responding to calls on the night phone and do not receive the time-and-a-half overtime that they should receive for regular overtime work.

66. Defendant has violated, and continues to violate Title 5 of the U.S. Code by compensating plaintiffs for the time that they spend responding to calls on the night phone as administratively uncontrollable overtime and not regular overtime work.

67. Instead, pursuant to Title 5 and its implementing regulations, defendant is required to compensate plaintiffs, and those similarly situated, with regularly scheduled overtime for the entire shifts that they monitor and respond to the night phone because the shifts are scheduled in advance of the administrative workweek and the entire shift consists of compensable work.

68. Defendant has violated the provisions of 5 U.S.C. § 5542, as well as rules and regulations of OPM, and the policies of U.S. Immigration and Customs Enforcement by failing to properly compensate plaintiffs for this regular overtime work. By doing so, defendant has deprived the plaintiffs of the rights and protections of Title 5 and acted arbitrarily and in derogation of the rules and regulations of U.S. Immigration and Customs Enforcement, resulting in monetary damages to plaintiffs by not being paid for regular overtime work pursuant to 5 U.S.C. § 5542.

69. As a result of the defendant's violations of Title 5, there have become due and owing to each of the plaintiffs various amounts that have not yet been precisely determined. The employment and work records for each plaintiff are in the exclusive possession, custody and control of defendant and its public agencies and the plaintiffs are unable to state at this time the

exact amounts owing to each of them. Defendant and its public agencies are under a duty imposed by the Government Accounting Office retention schedule, the FLSA (29 U.S.C. §211(c)) and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to plaintiffs and other employees similarly situated from which the amounts of defendant's liability can be ascertained.

70. Pursuant to the Back Pay Act, 5 U.S.C. § 5596, plaintiffs are entitled to recover interest on their back pay damages for the defendant's failure to pay them overtime compensation.

71. Plaintiffs are entitled to recover attorneys' fees and costs under the Back Pay Act, 5 U.S.C. § 5596 as well as other applicable laws and regulations.

WHEREFORE, the plaintiffs, on their own behalf and on behalf of others similarly situated, pray that this Court:

(a) Enter judgment declaring that the defendant has willfully and wrongfully violated its statutory obligations, and deprived each of the plaintiffs of their rights;

(b) Order a complete and accurate accounting of all the compensation to which the plaintiffs are entitled;

(c) Award each plaintiff monetary liquidated damages equal to their unpaid compensation, plus interest;

(d) Award plaintiffs their reasonable attorneys' fees to be paid by the defendant, and the costs and disbursements of this action; and

(e) Grant such other relief as may be just and proper.

                                        Respectfully submitted,

Dated: January 9, 2018                     /s/ Gregory K. McGillivary
                                          Gregory K. McGillivary
                                          WOODLEY & MCGILLIVARY LLP
                                          1101 Vermont Avenue, N.W.
                                          Suite 1000
                                          Washington, D.C. 20005
                                          (202) 833-8855

                                          Counsel of Record


                                          Theodore Reid Coploff
                                          WOODLEY & MCGILLIVARY LLP
                                          1101 Vermont Avenue, N.W.
                                          Suite 1000
                                          Washington, D.C. 20005
                                          (202) 833-8855